(No. 73363.—

SHIRLEY DUNGEY *et al.*, Appellees, v. HAINES & BRITTON, LTD., *et al.* (Economy Fire and Casualty Company, Appellant).

*Opinion filed May 20, 1993.*

HARRISON and McMORROW, JJ., took no part.

BILANDIC, J., dissenting.

Wm. Kent Brandon and Christy W. Solverson, of Brandon, Schmidt & Palmer, of Carbondale, for appellant.

Gary L. Bement, of Nelson, Bement, Stubblefield & Rich, of Belleville, for appellees.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Defendant insurance company refused to pay plaintiffs' insurance claim following a serious automobile accident. Plaintiffs brought suit in the circuit court of Randolph County against defendant Haines & Britton, Ltd. (Haines), for breach of contract and negligence and against Economy Fire and Casualty Company (Economy) for breach of contract. Plaintiffs and Economy filed motions for summary judgment. The trial judge granted Economy's motion for summary judgment, finding as a matter of law that the named drivers exclusion endorsement contained in the policy excluded coverage and was unambiguous. The trial court also found that defendant Haines was not an agent of Economy and that Economy

would not be liable for any negligence on the part of Haines. Plaintiffs appealed and the appellate court, with one justice dissenting, reversed and remanded. (224 Ill. App. 3d 1091.) Plaintiffs' appeal did not include the issue of Economy's relationship with Haines. Because plaintiffs' appeal did not involve Haines, the record does not indicate the status of Haines with respect to the original complaint. We granted Economy's petition for leave to appeal (134 Ill. 2d R. 315), and now reverse the appellate court and affirm the trial judge's granting of Economy's motion for summary judgment.

## FACTS

In 1981, plaintiffs Shirley Dungey and her husband John Dungey attempted to obtain automobile insurance coverage through Haines, an insurance broker. On April 22, 1981, Economy issued Shirley Dungey an insurance policy, numbered EF12—308776. The policy covered a 1980 Plymouth Horizon automobile.

Shirley's husband, John Dungey, had received a reckless driving ticket in 1979. Therefore, as part of the policy, Shirley Dungey signed a named drivers exclusion endorsement excluding her husband John from coverage. At the bottom of the endorsement appeared the notation "CE—180." The effective date of the exclusion endorsement was April 22, 1981. Although John Dungey was not insured by Economy, Haines was able to obtain insurance for John's 1973 Buick through another insurance company.

Shirley Dungey renewed this policy one year later. Once again she was asked to sign and signed a named drivers exclusion endorsement excluding John from coverage. This second named drivers exclusion endorsement differed from the first in ways not material here, but still excluded John Dungey from coverage. The notation "CE—303" appeared at the bottom of this endorsement.

A space was provided for an expiration date, but no date was entered. The effective date of the endorsement was April 22, 1982.

Thereafter, the policy was renewed on numerous occasions. Shirley Dungey was not again asked to sign a named driver exclusion endorsement. Rather, Shirley received a declaration statement from Economy each time she renewed. The declaration statement had a pre-printed line entitled "Endorsement(s)." Printed after this were a series of numbers, one of which was "CE—303." This was the number on the bottom of the second signed named drivers exclusion endorsement attached to the original policy. It indicated that John Dungey was excluded from insurance coverage.

In 1985, the Dungeys obtained a 1985 Chevrolet Sportsvan. Title was registered to John and Shirley Dungey. To obtain coverage for this van, Shirley Dungey added the van to the policy which excluded her husband from coverage. Shirley stated that she told the insurance broker, Haines, that John would be the primary driver.

The Dungeys had other insurance with Economy. In 1983, Shirley obtained a second policy from Economy, numbered 12—398914. Shirley's son, Brian, was listed as the primary driver. Two cars previously insured under the first policy were, at different times, insured under this second policy. Policy periods were shorter and premiums were higher than the first policy. No endorsement excluding John Dungey was required under this second policy. Declaration statements sent to Shirley on renewal of this policy did not contain the "CE—303" notation.

In 1985, on the same day the Dungeys added the Chevrolet van to the first policy, they obtained a third policy from Economy. This policy was numbered EF12—500793. John Dungey, who had previously been insured by another insurance company, and Shirley were listed as drivers. This policy covered a 1984 Chrysler Laser

which had previously been insured under Shirley's first policy. This third policy also had shorter policy periods and higher premiums.

All policies were periodically renewed according to the respective periods of coverage. At each renewal, a declaration statement was sent to the named insured. The declaration statements pertaining to the first policy, which subsequently covered the 1985 van, included an endorsement line where "CE—303," the named drivers exclusion endorsement, was printed.

On March 29, 1986, John Dungey was driving the 1985 van, which was insured under Shirley Dungey's first policy containing the exclusion, when he was involved in a single-car accident. John was injured and the van was destroyed. Economy denied the plaintiffs' claim for coverage on the basis that John Dungey was excluded from coverage under Shirley's first insurance policy.

Plaintiffs filed suit to recover damages for breach of contract and negligence against both Haines and Economy. Plaintiffs and Economy filed motions for summary judgment. The circuit court granted Economy's motion for summary judgment. Plaintiffs appealed. The appellate court, with one justice dissenting, reversed the trial court's judgment in favor of Economy and remanded the cause for trial. The appellate court held that the exclusionary clause was ambiguous and that there was therefore a genuine issue of material fact concerning the intent of the parties as to the exclusion clause. (224 Ill. App. 3d 1091.) Economy filed a petition for leave to appeal, which we allowed (134 Ill. 2d R. 315).

## DISCUSSION

Plaintiffs argue that Shirley's first policy, which eventually covered the van involved in the accident, was am-

biguous and should be construed strictly against Economy.

Plaintiffs maintain that the exclusion clause is ambiguous for a number of reasons. First, they argue that the notation "CE—303," which appeared on the endorsement line of the renewal declaration statements, is ambiguous because it does not explicitly state that John is excluded from coverage. Plaintiffs argue that these codes are unintelligible to the reasonable person. At best, plaintiffs argue, these codes may possibly be interpreted by reference to the original policy.

Plaintiffs also argue that Economy's actions are a source of ambiguity. Economy insured John on the 1984 Chrysler Laser under a separate policy. Further, after signing the drivers exclusion endorsement pertaining to the first policy on two separate occasions, Shirley was not asked to again sign the endorsement. Therefore, plaintiffs claim a reasonable person could draw the inference that John Dungey was covered to drive the 1985 van.

Economy, on the other hand, argues that the exclusion endorsement is clear and unambiguous and must be applied as written.

The "renewal of a policy is, in effect, a new contract of assurance, being, unless otherwise expressed, on the same terms and conditions as were contained in the original policy. [Citations.]" (*Palmer v. Bull Dog Auto Insurance Association* (1920), 294 Ill. 287, 291; see also *Eipert v. State Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 637.) Further, unless provided otherwise, it is the general rule that when a policy renewal is made the terms of the original policy become part of the renewal contract of insurance. *Economy Fire & Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, 563; see also *Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910.

In *Pearce*, the issue was whether a youthful drivers exclusion endorsement was in effect at the time of an automobile accident. The exclusion was signed and attached to the original policy. Upon renewal, a certificate was sent to the insured. It contained the notation, among others, "CE—90." This was the number at the bottom of the endorsement attached to the original policy. After the various notations was a statement that they were the form numbers of printed endorsements attached to the policy.

The defendant argued that the exclusion was not in effect at the time of the accident. Defendant claimed the original endorsement expired by its own terms because the form was not re-executed upon renewal. The court rejected this argument. It held, in part, that because the renewal certificate listed the form numbers of the endorsements and because there was no indication that the original endorsement was not intended to be part of the renewal contract, the terms of the original endorsement became part of the renewal contract of insurance. *Pearce*, 79 Ill. App. 3d at 563.

*Pearce* is consistent with our own analysis. Each renewal, including the renewal covering the date of the accident, was a new contract that incorporated the terms of the original insurance contract. One of these terms, indicated on the declaration statement as "CE—303," was the named drivers exclusion endorsement. We recognize that the word "Endorsement(s)" which preceded the notation "CE—303" in the instant case is not as explicit as the statement in *Pearce* that the notations were the form numbers of printed endorsements attached to the policy. Nevertheless, the use of the word "Endorsement(s)" in the instant case was sufficient to convey to the insured that the notations referred to the policy's endorsements.

The renewal policy of insurance, evidenced by the declaration statement received upon renewal, therefore included the named drivers exclusion endorsement excluding John Dungey from coverage. As such, the policy is only susceptible to one reasonable construction, which is that John Dungey is excluded from coverage under his wife's first policy. In interpreting insurance policies, as with other contracts, policy provisions are deemed ambiguous if they are subject to more than one reasonable construction. (*United States Fidelity & Guarantee Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64.) Because we have determined that the policy and renewal declarations are only susceptible to one reasonable construction, the instant insurance policy is not ambiguous.

This does not, however, end our inquiry. Relying on *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, plaintiffs contend that Economy's actions are also a source of ambiguity. In *Glidden* this court held:

> "An insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued. [Citation.]" (*Glidden*, 57 Ill. 2d at 336.)

Thus, in determining whether an ambiguity exists in an insurance contract, this court's opinions have held that the court should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties and the predominate purpose of the contract, which is to indemnify the insured. *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376; see *Adman Products Co. v. Federal Insurance Co.* (1989), 187 Ill. App. 3d 322, 325. But see 2 Couch on Insurance 2d §15:57, at 302 (rev. 1984) ("A contract different from that made by the parties cannot be read into the policy

from the surrounding circumstances, such as the conduct of the parties, to give it either a more extensive or a more limited meaning than that expressed therein").

Based on the standard set forth in *Glidden*, plaintiffs argue that factual circumstances surrounding the issuance of the policies render the instant insurance contract ambiguous. They first state that Shirley Dungey was asked to re-execute the exclusion endorsement upon initially renewing her first policy. Thereafter, she was never again asked to sign the exclusion. Plaintiffs therefore contend that Shirley could have reasonably believed that she had to execute a new exclusion upon each renewal for John to remain excluded from coverage under the first policy. This belief, however, is unfounded. An examination of the two endorsements shows that Shirley signed exclusion endorsement "CE—180" when the first policy was originally issued and exclusion form "CE—303" at the time of its first renewal. On each subsequent renewal, the endorsement section of the renewal declaration statements clearly referred to endorsement "CE—303," the second named drivers exclusion form, signed by Shirley at the time of the first renewal of the policy.

Plaintiffs also state that Economy insured John Dungey under the third policy issued to John and Shirley. Plaintiffs therefore claim that they could reasonably have believed that Economy no longer possessed reservations about extending coverage to John under Shirley's first policy. Similarly, the plaintiffs state that no exclusion clause was required under the second policy with the Dungeys' son as listed driver. They therefore claim that they could reasonably believe that the original exclusion endorsement was no longer in effect. Again, plaintiffs' beliefs are unfounded. The second and third policies both required higher premiums and were for shorter policy periods than the first policy. The Sportsvan insured under the first policy excluding John as a

driver was never insured under the two other policies issued to John and Shirley and the Dungeys' son. The decision to provide insurance to John Dungey under these terms, and for vehicles insured under those policies, bears no relationship to Economy's willingness to provide him with insurance under the first, lower premium, policy.

Finally, plaintiffs argue that the factual setting in which the policy was issued created a genuine issue of material fact which could not be resolved by summary judgment. Summary judgment should only be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) In the instant case, the trial judge was presented with the relevant and uncontroverted facts through the pleadings, depositions, affidavits and admissions of fact. We believe that as a matter of law the trial judge was correct in holding that the factual circumstances did not render this policy ambiguous. The clear and unambiguous language of the policy rebuts any attempt by the plaintiffs to show ambiguity in the policy through these factual circumstances. Summary judgment was therefore an appropriate disposition for this case.

For the reasons stated, we reverse the judgment of the appellate court and affirm the judgment of the circuit court of Randolph County.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICES HARRISON and McMORROW took no part in the consideration or decision of this case.

JUSTICE BILANDIC, dissenting:

I respectfully dissent. The majority's decision contravenes accepted principles of law governing the construc-

tion of insurance policies. In construing an insurance contract, the primary purpose is to give effect to the intentions of the parties as expressed in the contract. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 108.) If the terms of an insurance policy are unambiguous, a court must give them effect as written. (*United States Fidelity & Guaranty Co. v. Wilkin Insurance Co.* (1991), 144 Ill. 2d 64, 74.) Ambiguous terms, on the other hand, will be construed in favor of the insured and against the insurer who drafted the policy. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486.

In determining whether an ambiguity exists, the court must not interpret the policy in a vacuum but, rather, is required to consider the particular factual setting in which the policy was issued. (*Goetze v. Franklin Life Insurance Co.* (1975), 26 Ill. App. 3d 104, 108.) This court has recognized that "[w]hat at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued." *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336.

The undisputed facts in this case establish that Shirley Dungey obtained the policy under which coverage is sought in 1981. At the time this original policy was issued, Shirley was required to sign a "named driver exclusion" endorsement, which excluded her husband from coverage under the policy. The bottom of that endorsement contained the symbol or notation "CE— 180." The following year, Shirley renewed the policy. At that time, Shirley signed a *second* exclusion endorsement which differed from the first in several respects. Most notably, the second endorsement contained a different symbol or form notation than that which appeared on the endorsement attached to the original policy. It is Economy's position that this *second* exclusion endorse-

ment (*i.e.,* form number "CE—303") became part of the *original* insurance contract and, thus, was a term of the contract during the 1983, 1984 and 1985 renewal periods.

The majority accepts Economy's argument and concludes that the terms of the disputed policy are unambiguous. In support of this determination, the majority purports to apply the general rule that, when a policy renewal is made, the terms of the original policy become part of the renewal contract of insurance, *unless indicated otherwise.* (155 Ill. 2d at 337.) The factual circumstances surrounding the renewal of the policy in 1982, however, clearly demonstrate that the parties did *not* intend for the *original* exclusion endorsement, which Shirley executed in 1981, to become part of the renewal contract of insurance in 1982. On the contrary, Economy specifically required Shirley to execute a new endorsement. Thus, the general rule upon which the majority relies is simply inapplicable in the present circumstances.

Economy nevertheless claims that the parties intended that this *second* exclusion endorsement would form a part of the insurance contract during each renewal period. Economy claims that the parties' intent was adequately conveyed in the declaration sheet which Economy sent to Shirley Dungey in 1983, 1984 and 1985. The key inquiry in construing policy coverage, however, is not what the drafters actually intended, but whether that alleged intent was expressed in the language of the policy itself so that it was understandable to the person purchasing the insurance policy. (*Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906.) Because the insurer drafts the provisions of an insurance contract, any lack of clarity in the meaning of the contract will be construed against the insurer. (*Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309.) The rule that insurers should gain no advantage

from their own drafting ambiguities is most rigorously applied to exclusionary provisions. Our courts have held that exclusions from the general coverage provided by an insurance policy must be stated in such clear, definite and explicit language as to warrant the conclusion that the insured understood and accepted them. *Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682; *J.M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 627.

Applying these principles here, it is evident that an ambiguity exists regarding whether the parties intended to make the second exclusion endorsement, which Shirley executed when she renewed her policy in 1982, a part of the insurance contract during subsequent renewal periods. Economy points to the declaration sheets which it sent to Shirley Dungey upon renewal of the policy in 1983, 1984 and 1985. Those sheets contain the language "Endorsements," followed by a number of symbols, among which appears the symbol "CE—303." Economy claims that this language put the Dungeys on notice that the second endorsement was part of the insurance contract during the 1983, 1984 and 1985 renewal periods. This language is not defined in the original policy or on the declaration sheet. Therefore, this court must afford it its plain, ordinary and popular meaning. (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 332.) As one authority on insurance law has written:

> " 'Usual and ordinary meaning' has been stated variously to be that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal [person], to a reasonable [person], to persons with usual and ordinary understanding, to a business[person], or to a lay[person]." (2 Couch on Insurance 2d §15:18 (rev. 1984).)

The reference to "CE—303" contained in the declaration page sent to the plaintiffs when they renewed their insurance policy had no "usual and ordinary meaning" and would be virtually incomprehensible to the average, ordinary person.

The majority nevertheless adopts Economy's argument that this symbol informed the plaintiffs that John Dungey was excluded from coverage. The majority cites the decision in *Economy Fire & Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, as support for this proposition. In that case, however, the declaration sheet expressly informed the insured in large type that the symbol "CE—90" referred to the "FORM NUMBER[ ] OF PRINTED ENDORSEMENTS ATTACHED TO THE POLICY." The insured simply had to refer back to the original policy to discover the terms of that endorsement.

Here, on the other hand, there was nothing to alert the insured that "CE—303" was a form number of the second endorsement which Shirley Dungey signed when she renewed the policy in 1982. Even assuming that the Dungeys realized that "CE—303" was the form number of an endorsement, they could not refer back to the original policy to discover the terms of that endorsement. The undisputed facts establish that the exclusion endorsement attached to the original 1981 policy bore the form number "CE—180," while the declaration sheets listed the endorsement form number as "CE—303." Thus, the plaintiffs had no way of knowing how to decipher the code which Economy used on the declaration sheet sent to them upon renewal of the policy.

I must conclude that the cryptic symbol which appeared on the declaration sheet was not sufficient to put the plaintiffs on notice that the second endorsement which Shirley Dungey signed in 1982 was a term of in-

surance contract during subsequent renewal periods. I concur with the views expressed by the dissenting justice in *Pearce*:

> "These hieroglyphics are so cryptic, in my opinion, to the average insurance consumer that it cannot be said [the insured] could have understood their meaning or importance without the endorsement being attached to the certificate. *** The facts in this case preclude a finding that [the insured] comprehended and accepted a continuation of the endorsement ***." (*Pearce*, 79 Ill. App. 3d at 568 (Harrison, J., dissenting).)

Although Economy certainly knew what the symbol meant, it failed to provide the Dungeys with any means of deciphering the code. The sole reference to "CE—303" was incomprehensible to the insured and was therefore ambiguous as a matter of law. Because the terms of the policy are ambiguous, they must be construed strictly against the insurer and in favor of coverage. *Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906; *Great Central Insurance Co. v. Bennett* (1976), 40 Ill. App. 3d 165; *Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910.

Such a construction is particularly appropriate here, because Economy's actions led the Dungeys to believe that the particular exclusion at issue would not apply. The circumstances surrounding the issuance of the original policy and the renewal of the policy one year later created a reasonable expectation that Economy would exclude John Dungey from coverage *only if* Shirley executed a new endorsement at the beginning of each renewal period. The mere fact that Economy sent Shirley declaration sheets which contained the unexplained symbol "CE—303" does not demonstrate that Shirley understood and accepted that endorsement during the 1983, 1984 and 1985 renewal periods. The majority's holding contravenes not only the principles of law applicable to

insurance contracts, but also the long-standing judicial policy favoring a liberal interpretation of insurance coverage. Accordingly, I dissent.

Although unnecessary to a proper decision in this case, I would also urge our court to find as a matter of policy that, when an insured renews an insurance policy, the insurance company must attach a copy of any endorsements to the certificate which it sends to the insured upon renewal. At a minimum, an insurer must briefly describe the nature of an endorsement in the renewal certificate. A renewal certificate which simply lists the form designation which the insurer has adopted for a particular endorsement is inherently ambiguous and should be construed against the insurer.