FIRST DIVISION 

FEBRUARY 17, 1998 

No. 96-4354

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

B. JOHN ELSON, CHRISTINE E. ELSON, KATHLEEN STRAND, THOMAS STRAND, and all others similarly situated,

Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 93 CH 9816

Honorable

Stephen A. Schiller,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiffs appeal from the dismissal of their fifth amended complaint, which alleged claims for breach of contract, statutory and common law fraud, reformation of contract, violation of the Illinois Insurance Code (215 ILCS 5/1 
et seq
. (West 1994)), and estoppel.  The action is based on defendant State Farm Fire and Casualty Company's denial of plaintiffs' claims under their 1993 homeowners insurance policies.

On August 2, 1996, the trial court granted defendant's motion to dismiss the fifth amended complaint for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1994).  The court denied plaintiffs' motions for reconsideration and for leave to file a sixth amended complaint on November 19, 1996.  It is from these orders that plaintiffs appeal.

I.  FACTS

Plaintiffs filed this action in September of 1993.  Each claim was based on the contention that defendant State Farm wrongfully denied plaintiffs' claims in 1993 for flood-related water damage under plaintiffs' homeowners insurance policies.  Plaintiffs purchased standard homeowners insurance policies from State Farm in 1990, which excluded coverage for water damage caused by sewer or drain backup.  In 1990, plaintiffs purchased additional insurance offered via an amendatory endorsement, which included coverage for such water damage.  Also in 1990, plaintiffs' homes were flooded and they made claims based on the drain backup coverage in the endorsement, which were paid by defendant.  

In 1991, plaintiffs received renewal notices from defendant which offered to renew their homeowners policies.  Along with the renewal notices, plaintiffs received policy booklets setting forth the terms of coverage.  The notice, termed a "renewal certificate," listed the number of the renewal policy on the face of the document and contained language which provided that $5,000 worth of drain backup coverage could be added to the policy upon payment of an additional $60. 

In 1992 and 1993, plaintiffs continued to receive such renewal notices for their State Farm insurance policies and paid the required premiums, although they did not pay the additional $60 to receive coverage for drain backup damages.  The amount of the premium did not reflect elimination of coverage for sewer and drain backup.  In 1993, after flooding caused more water damage to their properties, plaintiffs again filed claims under their homeowners policies.  Defendant denied these claims, asserting that the 1990 amendatory endorsement was not renewed in 1991 along with the original policies and plaintiffs were not covered for such damage. 

II. ANALYSIS

In reviewing an order on a section 2-615 motion to dismiss, the court shall apply a 
de novo
 standard of review.  
Board of Library Trustees v. Cinco Construction, Inc.
, 276 Ill. App. 3d 417, 658 N.E.2d 473 (1995).  The standard of review for a section 2-615 motion to dismiss is whether the complaint sufficiently states a cause of action, and the merits of the case are not considered.  
Jesperson v. Minnesota Mining & Manufacturing Co.
, 288 Ill. App. 3d 889, 681 N.E.2d 67 (1997).  Upon review, all well-pleaded facts are taken as true and considered in the light most favorable to the plaintiffs.  
Rodgers v. Whitley
, 282 Ill. App. 3d 741, 668 N.E.2d 1023 (1996).  The complaint is to be construed liberally and should only be dismissed when it appears that plaintiff could not recover under any set of facts.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).

A section 2-615 motion attacks only defects apparent on the face of the complaint and is based on the pleadings rather than the underlying facts.  
Urbatis v. Commonwealth Edison
, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). The court, in ruling on a section 2-615 motion, may not consider affidavits, the products of discovery, documentary evidence not incorporated into the pleadings as exhibits, testimonial evidence or other evidentiary materials.  
Barber-Colman Co. v. A&K Midwest Insulation Co.
, 236 Ill. App. 3d 1065, 603 N.E.2d 1215 (1992).  In the present case, plaintiffs have incorporated several exhibits into their fifth amended complaint, primarily insurance documents, which must be considered when analyzing the sufficiency of the pleading.

In determining whether plaintiffs have met the section 2-615 pleading hurdle, we will address the sufficiency of each cause of action, or count, on an individual basis. 

A.  Breach of Contract (Count I)

In order to properly plead a breach of contract, a plaintiff must allege the following elements:  (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.  
Nielsen v. United Services Automobile Ass'n
, 244 Ill. App. 3d 658, 662, 612 N.E.2d 526 (1993).  Additionally, in alleging a breach of contract, a plaintiff's pleadings must allege facts sufficient to indicate the terms of the contract claimed to have been breached.  
Nielsen
, 244 Ill. App. 3d at 662.  The general principles governing the interpretation of insurance contracts do not differ from those controlling in other contracts.  
Rivota v. Kaplan
, 49 Ill. App. 3d 910, 364 N.E.2d 337 (1977).

In construing insurance contracts, the court's primary purpose is to give effect to the intention of the parties as expressed therein.  
Rivota
, 49 Ill. App. 3d at 915.  Where the terms of a policy are clear and unambiguous, their plain meaning will be given effect. 
Economy Fire & Casualty Co. v. Kubik
, 142 Ill. App. 3d 906, 909, 492 N.E.2d 504 (1986).  Where, however, a provision in an insurance policy is subject to more than one reasonable interpretation, it is ambiguous and must be construed against the insurer and in favor of the insured. 
 
Kubik
, 142 Ill. App. 3d at 909.  
See also 
Jones v. State Farm Mutual Automobile Insurance Co.
, 289 Ill. App. 3d 903, 682 N.E.2d 238 (1997); 
Wahls v. Aetna Life Insurance Co.
,  122 Ill. App. 3d 309, 461 N.E.2d 466 (1983). 

In the present case, plaintiffs allege defendant breached its contract by failing to provide "plain, clear and conspicuous notice" of nonrenewal as required by their insurance policies and denying the claims of plaintiffs for losses due to water damage from sewer or drain backup.  Defendant contends that the 1990 amendatory endorsement which provided for such coverage was not part of the 1991 renewal policies and subsequent renewals of plaintiffs' homeowners insurance policies.  Defendant argues that sufficient notice of nonrenewal of the endorsement was established in two ways; first, the form number of the 1990 amendatory endorsement was not listed on the renewal notices under the section labeled "Forms, options and endorsements," and second, the renewal notices contained a statement which purportedly alerted insureds that in order to purchase sewer or drain backup coverage, an additional payment of $60 was required. The renewal of an insurance policy is, in effect, a new contract of assurance and, unless otherwise expressed, is on the same terms and conditions as were contained in the original policy.  
Dungey
 v. Haines & Britton, Ltd.
, 155 Ill. 2d 329, 614 N.E.2d 1205 (1993).  The general rule is that when a policy renewal is made, 
unless provided otherwise
, the terms of the original policy become part of the renewal contract of insurance.  
Dungey
, 155 Ill. 2d at 334; 
Economy Fire & Casualty Co. v. Pearce
, 79 Ill. App. 3d 559, 399 N.E.2d 151 (1979).  Defendant claims it has "provided otherwise" by giving sufficient notice of nonrenewal of the endorsement and thus plaintiffs were not covered for water damage under the version of the policies in effect.  

The key inquiry in construing policy coverage is not what the drafters actually intended, but whether that alleged intent was expressed in the language of the policy itself so that it was understandable to the person purchasing the insurance policy.  
Kubik
, 142 Ill. App. 3d at 911.  The rule that insurers should gain no advantage from their own drafting ambiguities is most rigorously applied to exclusionary provisions.  
Dungey
, 155 Ill. 2d at 340-41 (Bilandic, J., dissenting).  Our courts have held that exclusions from the general coverage provided by an insurance policy must be stated in such clear, definite and explicit language as to warrant the conclusion that the insured understood and accepted them.  
Protective Insurance Co. v. Coleman
, 144 Ill. App. 3d 682, 494 N.E.2d 1241 (1986).

Applying these principles here, it is evident that an ambiguity exists as to whether the amendatory endorsement was part of the insurance contracts during subsequent renewal periods.  Despite defendant's claims, it is not clear from the language of the renewal notices that the subject endorsement was not being renewed.  First, defendant contends that the primary insurance policies clearly exclude drain backup coverage.  While it is true that language excluding such coverage appears in the policies, such language also appeared in the policies when the 1990 amendatory endorsement providing for such coverage was in effect and when plaintiffs' claims for water damage were paid.  Defendant further asserts that because the renewal certificates did not list the form number of the 1990 amendatory endorsement, plaintiffs were notified that it was no longer in effect and the exclusions from drain backup coverage in the original policies must now apply. 

In support of this contention, defendant cites two cases that address the relevance of an endorsement number on a policy renewal document.

In 
Pearce
, the central issue was whether a "youthful drivers" exclusion endorsement was in effect at the time of an automobile accident.  
Pearce
, 79 Ill. App. 3d 559. The exclusion was signed and attached to the original policy, and upon renewal, a certificate was sent to the insured.  The renewal certificate contained the notation "CE-90," the form number of the endorsement attached to the original policy.  The defendant argued that the exclusion was not in effect at the time of the accident, as the original endorsement expired by its own terms and was not reexecuted upon renewal.  The court rejected this argument, holding that because the renewal certificate listed the form numbers of endorsements and because there was no indication the original endorsement was not intended to be part of the renewal contract, the terms of the original endorsement became part of the renewal contract of insurance.  
Pearce
, 79 Ill. App. 3d at 563.

The listing of an endorsement number on a renewal certificate was also discussed in 
Dungey
.  In 
Dungey
, the plaintiff was asked to sign a "named drivers" exclusion endorsement excluding her husband from coverage.  
Dungey
, 155 Ill. 2d at 332.  Upon renewal, the plaintiff was again asked to sign an endorsement, labeled "CE-303."  The plaintiff renewed this policy several times, and although she was not asked to sign any additional endorsement forms, the notation "CE-303" appeared after the word "Endorsement(s)" on each renewal declaration statement.  The plaintiff subsequently obtained a second, separate policy which did not contain the exclusion and, at the same time, added a third vehicle to the original policy, which contained the exclusion.  The defendant insurance company refused to pay damages when the plaintiff's husband was injured while driving the third vehicle under the original policy, as it contained the "named drivers" exclusion endorsement.

The plaintiff sued, claiming the notation of "CE-303" on the renewal certificate was ambiguous and the fact the insurance company issued a second policy which did not exclude the plaintiff's husband could lead a reasonable person to infer he was covered to drive the third vehicle under the initial policy.  The court rejected these arguments and held, consistent with 
Pearce
, that the policy was subject to only one reasonable construction - that the "named drivers" exclusion endorsement listed on each renewal certificate clearly indicated the plaintiff's husband was excluded from coverage.  The court said that each renewal was a new contract that incorporated the terms of the original insurance contract.  One of these terms, indicated on the declaration as "CE-303," was the "named drivers" exclusion endorsement.  
Dungey
, 155 Ill. 2d at 332.

The present case can be factually distinguished from 
Dungey
 and 
Pearce
.  A renewal is, by definition, a policy having the same terms and conditions as the original policy.  215 ILCS 5/143.14(d) (West 1994).  Both 
Dungey
 and 
Pearce
 involved renewals and held that the subject endorsements were renewed along with the policy and remained in effect after the renewal.  The listing of the endorsement numbers on the renewal certificates reinforced the renewal of the endorsements in question.  

However, in the case at bar, the provision providing drain backup coverage was removed despite the fact plaintiffs "renewed" their policies.  Though the number of the endorsement was absent from the renewal certificates, under the totality of the circumstances, this did not clearly convey an intent not to renew that particular coverage.  Based on both the legal definition of "renewal" and the plain meaning of the word, there was no reason for plaintiffs to believe that the policies differed in any material way from the 1990 policies.  If the amendatory endorsement was part of the policy in 1990, it is reasonable to believe that, upon renewal, the coverage it contained was renewed as well.  At best, the policies are ambiguous as to whether the coverage within the endorsement was renewed, and the absence of a form number for the endorsement does not clarify this issue without further explanation to the insured. 

Defendant argues that it provided such explanation to the insured regarding the nonrenewal of the endorsement by including language to that effect in the upper corner of the renewal notices.  However, rather than indicating to plaintiffs that their coverage for drain backup was not being renewed, we find the wording of the explanation compounds the ambiguity surrounding this coverage.

The explanation was worded differently in the Elsons' and Strands' renewal notices.  The Elsons' renewal notice contained the following version:

"You may add $5000 worth of sewer or drain coverage to your policy for $60.00.  
To add this coverage
, return this notice with your payment of $60.00."  (Emphasis added.)

The Strands' renewal notice contained the following language:

"You may add $5000 worth of sewer or drain coverage to your policy for $60.00.  
To add this increased protection
, return this notice with your payment of $60.00."  (Emphasis added.)  Defendant argues this language substantiates its notice to insured plaintiffs that the coverage in question was no longer in effect and that additional payment would be necessary to be covered for water damage.  The fact that defendant chose to provide this additional language indicates it recognized the need to "communicate" with plaintiffs about the reduction of coverage.  However, defendant did not use unambiguous language to communicate the nonrenewal in the present case.

In interpreting insurance policies, policy provisions are deemed ambiguous if they are subject to more than one interpretation.  
Dungey
, 155 Ill. 2d at 336.  We agree with plaintiffs that the language in question is ambiguous and can be interpreted in various ways.  The language can be read to mean either that the insured has no coverage for this particular item and must pay an additional $60 premium to be covered, as defendant contends, or it can be read to mean that a payment of $60 will provide an additional $5,000 worth of coverage for water damage above and beyond the existing coverage, as interpreted by plaintiffs.  This creates an ambiguity as to coverage.  

In determining whether an ambiguity exists in an insurance contract, this court has held that a court should consider the totality of the circumstances, including the subject matter of the contract, the facts surrounding its execution, the situation of the parties and the predominate purpose of the contract, which is to indemnify the insured. 
Dungey
, 155 Ill. 2d at 336. See also 
Dora Township v. Indiana Insurance Co.
, 78 Ill. 2d 376, 400 N.E.2d 921 (1980).

In the present case, there are several circumstances which contribute to the ambiguity of the insurance contracts at issue.  First, the document which defendant purports gives notice to plaintiffs of nonrenewal of the endorsement is called a "renewal certificate."  The term "nonrenewal" does not appear in this document.  Again, the general rule is that, unless otherwise provided, when a policy renewal is made, the terms of the original policy become part of the renewal contract.  
Dungey
, 155 Ill. 2d 329; 
Pearce
, 79 Ill. App. 3d 559.  Here, the renewal certificates give plaintiffs every reason to believe that the original terms were incorporated into the renewal contracts and no clear indication defendant "provided otherwise." 

Significantly, though one type of coverage was eliminated, the renewal policies provided no corresponding reduction in premium.  The lack of a reduced premium further magnifies the ambiguity of the language on the renewal certificates, which referred to "add[ing] coverage" or "add[ing] increased protection" for $60.  It is reasonable to infer that the payment of an additional $60 would provide the insured with a higher amount of drain backup coverage - in addition to the coverage plaintiffs believed was already provided by the policies.  If the premium had been reduced by $60, and the message had appeared, such an inference would be less likely.  

Additionally, plaintiffs had previously made claims for water damage under their homeowners policies.  Plaintiffs had invested in and utilized water damage protection prior to 1991, and it is reasonable to believe that a renewal of the same policies would again offer this coverage, especially in the absence of unambiguous notice to the contrary.

Where there is an ambiguity in an insurance policy, all exclusions, conditions or provisions which tend to limit or defeat liability should be construed most favorably to the insured.  
Economy Fire & Casualty Co. v. Bassett
, 170 Ill. App. 3d 765, 525 N.E.2d 539 (1988).  The reason for this rule is twofold: (1) the intent of an insured in purchasing an insurance policy is to obtain coverage, and therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent; and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically.
  
State Farm Mutual Automobile Insurance Co. v. Schmitt
, 94 Ill. App. 3d 1062, 419 N.E.2d 601 (1981).

The intent of the insureds in the present case is evident in that they had previously purchased an endorsement which specifically provided for coverage for water damage caused by sewer or drain backup.  As noted above, claims were made and paid under this endorsement for flood damages.  It is therefore not unreasonable to believe plaintiffs intended to retain the same coverage, and thus the ambiguity should be construed consistent with plaintiffs' intent.  

Regarding the second prong, defendant could have provided sufficient notice to plaintiffs regarding the significant reduction in coverage.  As plaintiffs point out, a document clearly detailing the elimination of water damage coverage entitled "About your new homeowners policy" (exhibit E, fifth amended complaint) was prepared and issued by defendant as the cover page of the renewal policy.  This document states that enclosed is "your new State Farm Homeowners policy which replaces your current policy."  It further states that the new policy contains some changes which broaden or add coverage and some that reduce or eliminate coverage.  The document encourages insureds to review the changes and includes a section that covers reductions or eliminations of coverage.  Included under this heading is the following language:

"Back-up of sewer or drain coverage is not being renewed as part of your basic Homeowners coverage.  You may be eligible to add this coverage by endorsement for an additional premium charge."

The above language clearly and unambiguously notifies insureds that backup of sewer or drain coverage was not renewed.  However, plaintiffs allege they never received this part of their policies, a well-pleaded fact accepted as true for purposes of a section 2-615 analysis.

The issue of what constitutes proper notice of nonrenewal has been previously addressed by this court. In 
First National Bank v. Country Mutual Insurance Co.
, 175 Ill. App. 3d 860, 530 N.E.2d 521 (1988), the issue presented was whether defendant's notice of nonrenewal of an insurance policy was sufficient.  The insureds were required to renew their Farm Bureau membership before their Farm Bureau insurance policy could be renewed.  Plaintiff argued the insureds were confused by the subject line of the letter, which read "Farm Bureau Membership."  However, the notice was entitled "Notice of Intent Not to Renew" and contained the phrase "unless you reinstate your farm bureau membership *** non-renewal will be necessary."  
First National Bank
, 175 Ill. App. 3d at 863.  The document also stated the dates when the policy was to expire. 
 The court found the notice of intent not to renew was not ambiguous and complied with the Illinois statute requiring such notice.  
First National Bank
, 175 Ill. App. 3d at 867. The court further held that a reasonable person reading the notice would understand that to take no action would result in the policy's expiration on the date stated.  
First National Bank
, 175 Ill. App. 3d at 867.  The same is simply not true in the present case, as presented in the plaintiffs' complaint.  There is no explicit reference to a "nonrenewal" or an "intent not to renew," and the language appearing on the renewal certificates regarding the purchase of water damage coverage for an additional $60 does not convey the information that this coverage was not renewed.

To find notice of nonrenewal as defendant claims, an insured must disregard the term "renewal," discover the absence of an endorsement form number, and infer from this absence that certain coverage was not renewed.  Further, the insured must interpret the ambiguous and confusing language regarding additional coverage or protection in exactly the way the insurer intended it.  Lastly, the insured must understand that the payment of a similar premium amount as the prior year provided plaintiffs with not the same coverage, but a reduction in coverage for water damage.

Based on the totality of the circumstances, we find the complaint has sufficiently stated a cause of action for breach of contract.  

B.  Violation of Illinois Insurance Code (Count V)

Under section 143.17 of the Illinois Insurance Code (Code), an insurance company is required to send by mail to the named insured at least 30 days' advance notice of its intention not to renew an insurance policy.  215 ILCS 5/143.17 (West 1994).    

Plaintiffs allege that defendant violated this section of the Code on the same basis the breach of contract was alleged.  

Defendant argues that under section 143.13(d) of the Code, "any successive polic[y] issued by the same insurer to the same insured, for the same or similar coverage, shall be considered a renewal policy."  215 ILCS 5/143.13(d) (West 1994).  Defendant asserts that the only change in coverage between the 1990 and successive policies is the elimination of coverage for sewer or drain backup, and this constitutes "the same or similar coverage."   Thus, defendant argues, a renewal took place and no notice of nonrenewal is required under the Code.  We disagree.  Without the provisions contained in the 1990 endorsement, the policy contains no coverage for water damage from sewer or drain backup, which was clearly coverage plaintiffs had sought, purchased and made claims on in the past.  With regard to water damage, obviously an important component of the policy to plaintiffs, the 1990 policy and the 1991 and subsequent policies were, in fact, quite dissimilar.  Therefore, the provision in the Code requiring notice of nonrenewal must apply.  We find plaintiffs have sufficiently alleged facts to support their claim of insufficient notice under the Code and that a valid cause of action has been stated.

C.  Common law and Statutory Fraud Claims (Counts II, III) 

Plaintiffs allege defendant made certain representations regarding the reduction in coverage of plaintiffs' homeowners insurance policies and assert claims based on common law fraud  and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq
. (West 1994)).  

In order to state a cause of action for common law fraud, the essential elements of fraud must be pleaded with specificity.  
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 675 N.E.2d 897 (1996).  The elements include:  (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.  
Cramer
, 174 Ill. 2d at 529.  

Plaintiffs have failed to adequately plead this cause of action in their complaint.  The communications made by defendant are not false statements of material fact that defendant knew or believed to be false.  

Plaintiffs also assert defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Act), section 2, which reads:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or 

employment of any deception, fraud, false pretense, false 

promise, misrepresentation or the concealment, suppression 

or omission of any material fact *** are hearby declared 

unlawful."  815 ILCS 505/2 (West 1994).

The Act was intended to protect consumers against fraud, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of trade or commerce.  
Washington Courte Condominium Assoc'n-Four v. Washington-Golf Corp.
, 267 Ill. App. 3d 790, 643 N.E.2d 199 (1994).  The Act was designed to provide broader protection for consumers than the common law action of fraud and thus a plaintiff is not required to prove every element of common law fraud in order to recover.  
Washington Courte
, 267 Ill. App. 3d at 838-39.

In order to state a claim for a violation of the Act, a plaintiff must allege the following:  (1) a deceptive act or practice; (2) an intent by defendant that plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce.  
Hoke v. Beck
, 224 Ill. App. 3d 674, 587 N.E.2d 4 (1992).  Plaintiffs allege defendant engaged in unfair or deceptive practices by purporting to sell renewal policies while failing to provide clear notice that the policies had been substantially changed and accepting payment for such renewal when in fact, the policies were not renewed.  

A complaint alleging a violation of consumer fraud must be pled with the same specificity as that required under common law fraud.  
Connick v. Suzuki Motor Co., Ltd.
, 174 Ill. 2d 482, 675 N.E.2d 584 (1996).  Plaintiffs' complaint fails to sufficiently plead the "deceptive act" of defendant that constitutes the alleged consumer fraud.  Merely characterizing the action as unlawful or wrongful is insufficient to allege a violation of the Act.  
Kennedy v. First National Bank
, 194 Ill. App. 3d 1004, 551 N.E.2d 1002 (1990).  Additionally, not all misrepresentations or omissions are actionable; only those for which culpability can be shown.  A misrepresentation may have been made "innocently" in that there is no intent to deceive. In claiming a violation of the Act, the perpetrator must have knowledge of the misrepresentation or omission and the misrepresentation or omission must be deceptive or unfair.  
Washington Courte
, 267 Ill. App. 3d at 838.

We do not find that plaintiffs pled with specificity the elements for a cause of action for statutory fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act.  

D.  Reformation of Contract  (Count IV)

We next turn to plaintiffs' assertion of reformation of contract.  The underlying basis for a reformation action is the existence of a mutual understanding between the parties which the parties agreed to reduce to a writing, but through either mutual mistake or mistake on one side and fraud on the other, a material provision was omitted.  
Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton
, 170 Ill. App. 3d 244, 524 N.E.2d 230 (1988).  Reformation of a contract should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties and that there has been either a mutual mistake or a mistake by one party and fraud by the other.  
319 South La Salle Corp. v. Lopin
, 19 Ill. App. 3d 285, 311 N.E.2d 288 (1974).

We find plaintiffs have failed to establish a cause of action for reformation of contract.  In the present case, plaintiffs argue that reformation is proper as plaintiffs mistakenly believed they were renewing insurance policies which covered water damage by sewer or drain backup, and defendant failed to provide plain, clear and conspicuous notice of the nonrenewal of the water damage endorsement in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and under common law fraud principles.  For the reasons discussed previously, the fraud claim cannot stand and the reformation claim based on the fraud claim must fail as well.

E.  Estoppel  (Count VI)

Finally, plaintiffs allege defendant should be estopped from denying coverage for the 1993 claims as defendant's conduct induced them to believe and have confidence in the renewal of their homeowners insurance from 1991 through 1993 under the same terms and conditions as the 1990 policies.  

In order to assert a claim of estoppel, a plaintiff must plead the following:  (1) words or conduct amounting to a misrepresentation or concealment of material facts; (2) the party against whom estoppel is alleged must have had knowledge at the time the representations were made that they were untrue; (3) the truth as to the representations must have been unknown to the party asserting estoppel at the time they were relied upon; (4) the party estopped must have intended or reasonably expected the conduct or representations would be acted upon; (5) the party asserting estoppel must have relied in good faith on the misrepresentation to his or her detriment; and (6) the party asserting estoppel must have so acted because of such representations or conduct and must be prejudiced if the party to be estopped is permitted to deny the truth thereof.  
Vaughn v. Speaker
, 126 Ill. 2d 150, 533 N.E.2d 885 (1988).  Plaintiffs' complaint alleges that defendant did not give plaintiffs plain, clear and conspicuous notice of the reduction of water damage coverage.  However, plaintiffs' allegations of ambiguity do not rise to the level of a misrepresentation or concealment of material fact known to be untrue, as required to assert an estoppel claim.

III. CONCLUSION

We hold that the trial court erred in dismissing plaintiffs' complaint as to the counts asserting claims for breach of contract and a violation of the Illinois Insurance Code provision requiring notice of nonrenewal for an insurance policy, and reverse on this basis.  We agree with the trial court's conclusion that plaintiffs did not sufficiently plead claims of statutory and common law fraud, reformation of contract, and estoppel. 

Additionally, because of our holding that plaintiffs' fifth amended complaint stated a cause of action, the question of class certification must be determined by the trial court.  
Moreno v. Joe Perillo Pontiac, Inc.
, 112 Ill. App. 3d 670, 445 N.E.2d 1184 (1983).  

Finally, we find it unnecessary to address plaintiffs' claim the trial court improperly denied leave to file a sixth amended complaint, in light of our finding that the fifth amended complaint stated a cause of action.

In view of the foregoing, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further action consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

MCNULTY, P.J., and RAKOWSKI, J., concur.