**AMERICAN COUNTRY INSURANCE COMPANY, Appellant,**

v.

**Carla A. PALUMBO, et al., Defendants,**

and

**Joshua L. Johnson, et al., Respondents.**

**No. ED 75872.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 15, 2000.

Gary P. Paul, Brinker & Doyen, L.L.P., Radford R. Raines, III, Boggs, Backer & Bates, L.L.C., Clayton, for appellant.

Donald T. Taylor, Robb, Taylor & O'Connor, Kansas City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, American County Insurance Company, ("insurer"), appeals from the judgment of the Circuit Court of Warren County granting the respondents', Joshua L. Johnson and Kearie L. Johnsons'[1] motion for summary judgment finding insurer's policy endorsement not applicable. We affirm.

On September 14, 1997, Carla A. Palumbo was operating a motor vehicle owned by Anita Banas, on Interstate 70 near its intersection with Springtown, within the city of Foristell, Missouri. The motor vehicle collided with a vehicle driven by Bryan S. Johnson and occupied by Laura A. Waldman. Johnson was killed in the collision and his children, Joshua L. Johnson and Kearie L. Johnson ("respondents"), are pursuing claims for wrongful death.

Insurer filed a petition in interpleader and for declaratory/equitable relief contending that policy endorsement AC4–210, which insurer contends is contained in Anita Banas' insurance policy, reduces the

liability coverage to the amount required by the Motor Vehicle Financial Responsibility Law when the insured vehicle was operated by a person under 25 years of age. This is a reduction from $250,000 each person/$500,000 each occurrence to $20,000/$40,000 or $25,000/$50,000 depending on whether Illinois or Missouri law, respectively, applies.

The relevant facts regarding Anita Banas' insurance policy are as follows: Anita Banas is the biological mother of Karen A. Banas, who was a passenger in the vehicle driven by Carla Palumbo on September 14, 1997. Anita Banas owns the 1988 Chevrolet Nova, which was involved in the collision. On that day, the vehicle was insured under an insurance policy with insurer. Carla Palumbo and Karen A. Banas were insured as defined under the policy. The declaration page of the policy provides the maximum limit for bodily injury liability under said policy is $250,000 for "each person" and $500,000 for "each occurrence."

Anita Banas applied for the policy in September 30, 1996, along with her husband, Henry Banas. The application described three vehicles including the 1988 Chevrolet Nova. The requested limits of liability were $250,000 each person and $500,000 each accident. The Banas' address was listed as Chicago, Illinois, with the vehicles being garaged in Edwardsville, Illinois. Insurer issued the policy on October 4, 1996, it did not include or list exclusionary endorsement AC4–210. On February 21, 1997, an agent of insurer, allegedly obtained the signature of Henry Banas on endorsement AC4–210. The endorsement signed by Henry Banas provided:

It is agreed with respect to the automobile described as:

1988 Chevy Nova (Year and Make of Car)

Carla A. Palumbo did not.

1. Laura R. Waldman adopted the motion,

1YSK5143JZ209237 (Motor and Serial Number)

or a replacement thereof, there shall be added to the section of the policy entitled "Persons Insured" or "Definitions of Insured," whichever of the sections appear in the policy to which this endorsement is attached, the following provision:

Notwithstanding any contrary provision in the policy or the limitation of coverage there in, insurance for bodily injury liability, property damage liability, uninsured and underinsured motorist coverage shall not be in the amounts stated in the declaration of the policy when an insured automobile is operated by a person under the age of 25 but shall be in the amounts provided in section 7–203 of the Illinois Vehicle Code; except the exclusion shall not apply to any child of the named insured; nor shall this exclusion apply as to uninsured or underinsured motorist coverage when the named insured or any relative of the named insured are occupants of the automobile described in the declarations or a temporary substitute automobile.

On February 23, 1997, Henry Banas died. On March 18, 1997, insurer received instructions from Anita Banas, through their agent, to delete Henry Banas as an insured, add Tim Banas as an insured, add a 1988 Chevrolet automobile, add Christopher Banas as an insured, and add a 1987 Toyota vehicle. On April 4, 1997, insurer renewed the policy and sent the declaration of the renewal policy. This declaration did not list endorsement AC4–210. Insurer contends endorsement AC4–210 did not appear on the declarations due to the "computer generated declarations page not being equipped to record non-ISO forms on the declarations page of the renewal policy." Anita Banas, as named insured with insurer, never signed, endorsed or agreed to any exclusionary endorsement

that would have reduced insurance coverage when her 1988 Chevrolet Nova was operated by a person under the age of 25.

At the time of the accident, on September 14, 1997, Palumbo was under the age of 25. As a result of the accident, respondents and Deborah A. Johnson, along with Kendrick C. Johnson, made claims for either personal injury or wrongful death. Insurer claimed the aggregate amount of these claims exceeded $50,000 which insurer claimed was the liability amount under the policy. Insurer deposited $50,000 with the court and requested claimants interplead for the fund. Respondents then filed their summary judgment motion alleging insurer was responsible for $250,000 per person and $500,000 per occurrence in insurance coverage for the motor vehicle collision that occurred on September 14, 1997.

On December 8, 1998, the above motion was heard by the trial court. On December 11, 1998, the trial court granted respondent's motion for summary judgment finding the failure of insurer "to include Endorsement AC4–210 in its declaration of coverage or in its itemization of applicable endorsements at the time of the renewal of the policy effectively removed said endorsement as a modification of the original policy limits of liability." The trial court found no ambiguity in the written terms of the insurance contract and ruled the policy limits remain $250,000 per person/$500,000 per occurrence.

Insurer appealed. This court, sua sponte, dismissed the appeal because there was no final judgment disposing of all claims.[2] On March 2, 1999, the trial court ordered the above judgment as final and under Rule 74.01(b) found there was no just reason for delay. Insurer appealed.

■ Our standard of review when considering appeals from summary judgments, is essentially de novo. *ITT Com-*

---

**2.** See *American Country Insurance Company v. Palumbo,* No. ED75659 (Mo.App.E.D. 1999).

*mercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). Further, we review the record in the light most favorable to the party against whom judgment was entered. *Id.*

■ Before we address insurer's points, we must address the issue of whether to apply Missouri law or Illinois law. Missouri choice of law rules follow the "most significant relationship test" of the Restatement (Second) of Conflicts of Laws, Section 188. *Superior Equipment Co., Inc. v. Maryland Cas. Co.*, 986 S.W.2d 477, 480 (Mo.App. E.D.1998). The factors we examine when determining which state has the most significant relationship to the action include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the residence of the parties. *Id.* In cases involving surety or casualty insurance, the most important factor is the state which the parties contemplated as the principal location of the insured risk. *Id.* The "location of the insured risk" is defined as "the state where it will be during at least the major portion of the insurance period" and in cases of automobile liability policies, "it is where the vehicle will be garaged during most of the period." *Id.* at 481 (quoting Restatement (Second) of Conflicts of Laws, Section 193, Comment b).

■ In the case at bar, the policy was purchased in Illinois, the Banases were Illinois residents, the policy was delivered in Illinois and the policy covered vehicles registered and garaged in Illinois. Further, from the record, it appears the only connection with Missouri is the accident. The latter fact, in of itself, is insufficient to establish the most significant relationship. See generally *Hartzler v. American Family Mutual Insurance Company*, 881 S.W.2d 653, 655 (Mo.App. W.D.1994). Based on the preceding factors, Illinois is the state with the most significant relationship to the action, therefore we will apply Illinois law to the case at bar.

■ Insurer raised two points on appeal. In point one, insurer alleged the trial court erred in granting respondents' motion for summary judgment in that under Illinois law, the general rule is when a policy renewal is made, unless provided otherwise, the terms of the original policy become part of the renewal contract. Insurer contends the terms of endorsement AC4–210 became part of the renewal policy so that the liability limits were the amounts stated in the Motor Vehicle Financial Responsibility Law and not $250,000/$500,000. We disagree.

"In construing insurance contracts, the court's primary purpose is to give effect to the intention of the parties as expressed therein." *Elson v. State Farm Fire and Casualty Co.*, 295 Ill.App.3d 1, 229 Ill.Dec. 334, 691 N.E.2d 807, 811 (1 Dist.1998).

Insurer cites *Messerly v. State Farm Mut. Auto. Ins.*, 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148 (4 Dist.1996) for the proposition the endorsement in question should apply because although Henry Banas, now deceased, signed the endorsement, Henry's actions bound his wife Anita under the policy. In *Messerly*, the court reasoned, "[r]equiring every potential 'insured' or 'additional insured,' or 'household member' who may be covered under a policy to visit or speak with an insurance agent in order to be given an offer of additional UM/UDIM coverage would be impractical." *Id.* at 151. "Furthermore, it would be inconsistent to find plaintiff is covered under the terms of a policy which benefit her but is not bound by the terms which do not benefit her. Plaintiff relied on her spouse to make decisions on her behalf in procuring automobile insurance, thus, she should be bound by those decisions." *Id.* at 151–52. In *Messerly*, husband had procured automobile insurance for himself and his wife. *Id.* at 148–49. Under Illinois law, the insurer is required to offer additional uninsured motorist (UM) coverage to all named insureds under a policy. When husband met

with insurer's agent, such an offer was made and husband declined the additional coverage for himself and his wife. *Id.* at 149. Wife was later involved in an accident with an uninsured motorist and incurred medical bills in excess of the limits her husband had selected. *Id.* Wife brought a declaratory action, asking the court to determine whether a legally sufficient offer of UM coverage to one named insured satisfied the offer requirement under the Illinois law. *Id.* The court found for insurer, finding "[a]n offer of UM coverage was made as required by the statute and, as the applicant and a named insured, [husband] rejected the offer, thereby binding all insureds under the policy." *Id.* at 152.

*Messerly* is distinguishable from the case at bar. Primarily, *Messerly* dealt with the sufficiency of an offer for additional coverage that the insured, by Illinois law was required to make. The offer was made at the time the parties' applied for the policy. The case at bar deals with an endorsement that reduces coverage. Further, and factually most compelling, the endorsement was signed almost five months after the parties applied for the original policy.

Insurer further argues the endorsement was part of the original policy and therefore when Anita Banas "renewed" her policy after her husband's death, she was bound by the terms in the original policy including the endorsement. Insurer cites *Dungey v. Haines & Britton, Ltd.*, 155 Ill.2d 329, 185 Ill.Dec. 520, 614 N.E.2d 1205, 1208 (1993) for the general rule that, unless otherwise provided, when a policy renewal is made the terms of the original policy become part of the renewal contract of insurance. In *Dungey*, wife obtained an insurance policy to cover her 1980 vehicle. Her husband had received a reckless driving ticket in 1979 and therefore, as part of wife's policy, she signed a named drivers exclusion endorsement excluding her husband from coverage. *Id.* at 1207. The endorsement was labeled CE–180. *Id.*

When wife renewed her policy one year later she again signed a named drivers exclusion endorsement excluding her husband from coverage. *Id.* The endorsement was labeled CE–303. *Id.* The policy was thereafter renewed numerous times. *Id.* Wife was not asked to sign another endorsement but received a declaration statement each time the policy was renewed. The declaration statements included endorsement CE–303. *Id.* In 1983 wife obtained a second policy from insurer, listing her son as the primary driver. *Id.* The policy periods were shorter and premiums were higher on this second policy than on the first policy. There was no endorsement CE–303 on the second policy. *Id.* In 1985, husband and wife purchased a new van. *Id.* Wife added the van to the first policy, the declaration statement included endorsement CE–303. On that same day, wife obtained a third policy from insurer. Husband and wife were listed as drivers and this policy covered a 1984 vehicle previously insured under wife's first policy. *Id.* This third policy had shorter policy periods and higher premiums than the first policy. *Id.* In 1986, husband destroyed the van insured under wife's first policy. Insurer denied coverage on the basis that husband was excluded under the first policy through endorsement CE–303. *Id.* The Illinois Supreme Court found husband was excluded from coverage because, "[e]ach renewal, including the renewal covering the date of the accident, was a new contract that incorporated the terms of the original insurance contract. One of these terms, indicated on the declaration statement as CE–303 was the named drivers exclusion endorsement." *Id.* at 1208.

The case at bar is factually distinguishable from *Dungey*. In our case, the original policy was issued on October 4, 1996, and did not include endorsement AC4–210, unlike in *Dungey*, wherein wife executed the endorsement with the original issued policy and with the renewal policy the second year. In our case, the endorse-

ment was signed by Henry Banas on February 21, 1997, over four months after the original policy was issued. Henry Banas died on February 23, 1997, two days after he signed the endorsement. On March 18, 1997, Anita deleted Henry as insured and added two people and two cars to the policy. On April 4, 1997, insurer renewed the policy. Insurer sent the declaration of said policy. The declaration did not list endorsement AC4–210, unlike in the *Dungey* case wherein the declaration statement listed endorsement CE–303 on every subsequent renewal of the first policy. In the case at bar, Anita Banas, the named insured never signed, endorsed or agreed to any exclusionary endorsement that would have reduced insurance coverage when her vehicle was operated by a person under the age of 25. Further, no subsequent declarations page listed endorsement AC4–210.

Therefore, we conclude the original policy did not include exclusionary endorsement AC4–210, husband's subsequent signature on the exclusionary endorsement, four months after the original policy was issued, did not bind wife on subsequent renewal because the declaration page never listed endorsement AC4–210 as part of policy and therefore, the liability limits remain the amount stated in the original policy, $250,000/$500,000.

In point two, insurer alleges the trial court erred in granting respondent's motion for summary judgment in that there was a genuine issue as to a material fact regarding whether endorsement AC4–210 was part of the renewal policy. Insurer argues the affidavits of its former Divisional Manager of Personal and Special Lines and its Personal Lines Underwriter, which both state endorsement AC4–210 was contained in the renewal policy creates a genuine issue of fact because it contradicts Anita Banas' affidavit that she never signed, endorsed, or agreed to any insurance endorsement that would reduce her coverage and that the endorsement was not included on her insurance policy.

"Construction of an insurance contract presents only a question of law; it is not submissible to a jury. Thus, it is an issue which is appropriate for determination upon summary judgment." *Rivota v. Kaplan*, 49 Ill.App.3d 910, 7 Ill.Dec. 176, 364 N.E.2d 337, 341 (5 Dist.1977).

Insurer does not contend endorsement AC4–210 was physically attached to the original policy or listed on the subsequent declarations pages, as this would be contrary to the record wherein they supply the original policy issued on April 4, 1997, and state in the same affidavits referenced above that endorsement AC4–210 did not appear on the declarations due to the "computer generated declarations page not being equipped to record non-ISO forms on the declarations page of the renewal policy." Therefore, the issue as to whether endorsement AC4–210 was contained in the renewal policy is a matter of construction, a question of law, not an issue of material fact. Point denied.

Based on the foregoing, the judgment of the trial court is affirmed.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.