## Commonwealth Building Corporation, Appellant, v. James A. Hirschfield, Appellee.

### Gen. No. 41,503.

Opinion filed December 23, 1940. Rehearing denied January 6, 1941.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, for appellant; I. E. Ferguson and Jesse H. Brown, both of Chicago, of counsel.

Soelke, Koehn & Loewy, of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

In a suit for rent to the amount of $3,300, on trial by jury, there was a verdict for plaintiff in the sum of $1,100. There were motions by each of the parties for judgment *non obstante veredicto*, which were in each case denied, and a motion by defendant for a new trial, which was allowed on August 1, 1940. This appeal is by leave from that order.

The material (and as we think, uncontradicted) facts are that the defendant with his family was in possession of an apartment used for residence purposes, under a written lease with the plaintiff, which by its terms expired September 30, 1938. The lease contained a clause (paragraph 11 not abstracted) providing that if defendant held over he would become liable for double rent. Mr. Kishin was the bookkeeper for plaintiff. He was also an attorney employed by the firm of Pennish and Rashbaum, and Mr. Pennish was managing director of this building. It contained 13 floors comprising 24 apartments, 12 of 7 rooms each and 12 of 9 rooms each. The apartment leased by defendant was known as 3-A. It contained 9 rooms, and the rent paid by defendant under his lease was $275 per month. The business office of defendant was at 544 N. Wells street.

Mr. Fleury was engineer in charge of the building, and Mr. Danny was his assistant. Mr. Zeri was a janitor helper. There was an elevator in the front of the building used exclusively by passengers and an elevator in the back of the building used exclusively for deliveries and general service. The passenger elevator was operated by an attendant. The freight

elevators were operated without an attendant by the use of electricity applied by pushing buttons.

Defendant determined to move at the expiration of his lease, and about two months before the lease expired so notified plaintiff by registered mail. Defendant employed the Federal Storage and Moving Company to do the necessary work and transportation of goods to that end. Two packers delivered boxes and barrels and necessary material for the packing of breakables on September 27. The breakable goods were packed in boxes and barrels and September 29 part of the household goods (including large items of furniture) were moved out by way of the elevator in the rear. Six to 10 van loads were moved out on September 29; 40 to 50 barrels (including cases). The moving continued for 3 days, the 28th, 29th and 30th of September.

While this was going on Danny was washing the walls and removing trash and garbage. Most of the goods had been moved out by the 30th, the day 'on which the lease expired. The work was, however, not quite completed. There had been some delay in getting the use of the elevators. Defendant gave evidence tending to show that the servants of plaintiff were responsible for this, but the evidence is denied by them and they on the contrary say they gave assistance. This would seem to be true as Mrs. Hirschfield testified she tipped them as a reward for their help. At any rate, when the lease expired at 12 o'clock on the night of September 30, the family was not yet out and with the servants slept in the apartment. Carpets and the bedroom furniture had not been removed but were promptly taken out on the following day, October 1.

At about 10 o'clock on the morning of October 1, Mr. Pennish, for plaintiff, served upon defendant at his office in Wells street, a notice as follows: "In view of the fact that you did not vacate possession of your apartment within the time provided for in your lease,

the undersigned has elected, and does hereby elect to treat you as a hold-over tenant for another year, and you are accordingly requested to pay October rent immediately.''

While the law is otherwise in England (16 R. C. L., § 684, p. 1163) it was decided in New York in the early case of *Conway v. Starkweather,* 1 Denio 113, that a tenant who holds over after the expiration of his term may, at the election of the landlord, be held to be either a trespasser or tenant for another similar term. Later New York decisions adhere to that rule (*Oussani v. Thompson,* 43 N. Y. S. 1061; *Ketcham v. Ochs,* 34 Misc. 470, aff'd 74 App. Div. 626; *Lang v. Ruehl,* 163 N. Y. S. 1085; *Witt v. New York,* 28 N. Y. Sup. Ct. 248) although the later case of *Herter v. Mullen,* 159 N. Y. 28, 70 Am. St. Rep. 517, seems to decide that the holding must be voluntary on the part of the tenant.

The New York rule was adopted by the Illinois Supreme Court in the case of *Clinton Wire Cloth Co. v. Gardner,* 99 Ill. 151, and has been followed in subsequent cases based upon the theory, however, that the rule is to be applied only where the holding is voluntary. *United Cigar Stores Co. v. Worth-Gyles Grain Co.,* 212 Ill. App. 26.

The argument for strict adherence to the New York rule is based upon the necessity for certainty as between landlords and tenants with regard to their respective rights. In a note to *Herter v. Mullen,* in the American State Reports, it is said:

''It is a universal rule that if premises are let for a year or from year to year, and the tenant holds over, the landlord may elect to treat him as a tenant from year to year, or when the renting is for a shorter period and the tenant holds over, he may be deemed to hold upon the terms upon which he entered, and the landlord may recover rent of him according to the terms of the original contract or lease. . . . or the landlord may at his election treat the tenant holding over as a trespasser and may bring ejectment against him

without any previous notice, unless the holding over has been such that it may be presumed that the landlord has assented thereto. . . .'' Among cases cited is *Brown v. Keller,* 32 Ill. 151, 83 Am. Dec. 258.

The trial court in granting defendant's motion for a new trial stated that it would be sustained ''only upon the error the court made in the giving of plaintiff's instruction No. 7.'' But on an appeal of this kind we are not limited in our review of the appeal to the reasons stated by the trial court. *Marks v. Pope,* 289 Ill. App. 558; *Rowoldt for use of Flanagan v. Cook County Farmers Mut. Ins. Co.,* 305 Ill. App. 93. Upon a consideration of the whole record we are of the opinion that the motion for an instructed verdict in favor of defendant should have been given, and that after the trial the motion of defendant for a judgment in his favor notwithstanding the verdict should have been allowed.

An examination of the cases discloses that usually they proceed upon one of two theories. First, that the voluntary action of the tenant is such as to disclose the right of the landlord to assume an intention on the tenant's part to create a second tenancy, or, secondly, that the action of the tenant is such that the court will as a matter of law hold the tenant liable for a second lease upon the principle of quasi contract that justice may prevail. Williston on Contracts, Vol. 6, § 1856.

On the undisputed facts of this case we think plaintiff is not entitled to recover upon either theory. The uncontradicted evidence recited above shows no grounds on which a voluntary agreement for a new tenancy could be inferred. Defendant was vacating the premises with reasonable speed and in good faith. The representatives of the landlord were present, knew and assisted them in getting their goods out of the apartment and were given extra pay for doing so. There is not a scintilla of evidence from which the jury could reasonably find there was any intention on the

part of defendant to continue the lease. Unfortunately, notwithstanding good faith, the removal of the last piece of furniture was delayed for a few hours. The tenant and his family did not arise at midnight and move out. They waited until the rising of the sun. Shortly thereafter the landlord availed himself of this supposed ancient rule of law and served notice of his intention to collect from defendant $3,300 for his delict. There is nothing either in word or deed of the tenant that indicates an intention on his part to renew. Every action indicated the contrary intention. Defendant, therefore, cannot be held on the theory of a voluntary contract. Nor in our opinion can defendant be held on the theory of quasi contract that justice required an absolute presumption of a contract for another tenancy. The lease provided for precisely such a contingency. The provision was in substance (paragraph 11 not abstracted) that if the tenant failed to move at the expiration of the lease, he should pay double the usual rent for the actual time of his occupancy. This is the agreement of the parties and is reasonable. The claim of plaintiff is highly penal in its nature. It has been held in New York that the rule is not applicable in such a case. *Pickett v. Bartlett,* 107 N. Y. 277. In *Green v. Kroeger,* 67 Mo. App. 621, under similar circumstances the court said:

"In this case the lease by express terms provides for the rights of the parties in the contingency of a holding over after its expiration. By the clause to that effect it is distinctly provided that the continued occupancy of the premises after the end of the term shall entitle the lessor to recover double rent from the occupiers for 'all such time.' This clause did not deprive lessor of his option to retake the premises at the expiration of the lease, but in case of his failure so to do or to make a new agreement with the lessees, it deprived him of the power to do more than recover double rent for the time he should permit the lessees to hold over after the expiration of the lease."

There are no Illinois decisions so far as we are informed to the contrary. We hold the motion of defendant for judgment in his favor notwithstanding the verdict should have been allowed. Under § 92 of the Civil Practice Act (Smith-Hurd Ann. Stats., ch. 110, par. 216, p. 419 [Jones Ill. Stats. Ann. 104.092]) the order allowing a new trial will be reversed and judgment entered in this court for the defendant notwithstanding the verdict.

*Reversed with judgment here for the defendant.*

McSurely, J., concurs.

Mr. Presiding Justice O'Connor specially concurring: I agree with what is said in the foregoing opinion and the result reached but I think it ought to be said that the claim made by plaintiff for $3,300 shocks the conscience of the court. It is wholly without merit and ought not to be entertained by any court of justice. As stated in the opinion, defendant had the right to remain in the premises all day of the 30th of September and it is common knowledge in Chicago, of which we take judicial notice, that some leases of apartments expire on the 30th of April and others on the 30th of September, and that a lease to a succeeding tenant begins the first of May and others on the first of October. And everyone knows that tenants who are vacating on the 30th of April or on the 30th of September, as the case might be, have not completed their moving on the last day covered by their respective leases, there being a great many persons moving at those times so that it is physically impossible to do so. But in such cases the "rule of reason" must constantly be kept in mind. *Maher v. New York, C. & St. L. R. Co.,* 290 Ill. App. 267; *Standard Oil Co. of N. J. v. United States,* 221 U. S. 1. Under this rule which is in every case whether we realize it or not, it is not every dereliction however slight which will give rise to a cause of action.