ALBERT   H.   HOOPES   *et   al.*,   Plaintiffs-Appellants,   *v.*   PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

Fourth District   No. 13788

Opinion filed May 2, 1977.

Albert H. Hoopes, of Bloomington, for appellants, *pro se.*

Alan Sternberg, of Bloomington, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

Plaintiffs, Albert H. Hoopes, Benjamin F. Hoopes and Margaret H. Forsyth, are the owners of a building located at 705 North East Street, Bloomington, Illinois. Plaintiffs, as lessors, had leased the second floor of this building to defendant since 1956. Under the latest extension to the lease, defendant's tenancy was to end on September 30, 1975. This lawsuit was brought by the plaintiffs seeking rent for the month of October 1975 under the theory that defendant did not relinquish possession of the premises at the end of the lease term and was a holdover tenant. In a bench trial at the close of plaintiffs' evidence, the judge granted defendant's motion for a directed verdict.

Plaintiffs' first witness was Mr. Kenneth Imlah, district sales manager for the defendant, who testified under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). According to Mr. Imlah, defendant moved its operation to a new location on the last Friday in September 1975 (he believed it was September 26). They left signs in two of the

windows which read: "Moved to a new location—207 South Prospect." Defendant did not remove these signs. A decal saying "Prudential Insurance Company" was left on the front door and removed in mid-October by Mr. Imlah's secretary. Imlah testified that his secretary mailed all of the keys except one to the owners of the building. The one set not mailed belonged to a secretary who was on vacation at the time of the move. He admitted that a secretary went back to the premises during the second week of October, gained entrance with her key, and removed the decal from the front door. Imlah did not believe that the lights had been left burning after September 30 and stated that he had no contact with the owners involving delivery of possession to them.

Mr. James Aman, a supervisor for Illinois Power Company, testified pertaining to defendant's account as an electricity customer while a tenant in plaintiffs' building. He testified that defendant did not notify his company of an account change for the 705 North East Street address until November 20, 1975, and until that time, the account for that location remained in defendant's name.

Plaintiff Dr. Benjamin Hoopes testified that he was one of the owners and maintained an office adjacent to the leased premises in question. Dr. Hoopes indicated that he walks by 705 North East Street several times a day. Although he was not notified by Prudential that they would be moving, he said, "I knew they were going to move." He admitted seeing, shortly after September 25, the signs in the window saying that defendant had moved. Dr. Hoopes said that he did not have keys to defendant's offices, but on prior occasions had been let in by a janitor who did have keys. Several weeks after defendant moved, Dr. Hoopes gained entrance to the offices, having been let in by Mr. Ellis, another tenant who apparently had keys to Prudential's offices. Dr. Hoopes removed the signs from the windows which stated that defendant had moved.

Plaintiff Albert Hoopes, attorney for the plaintiffs, testified that he first observed cardboard signs in the windows of defendant's offices on September 27 or 28, indicating that defendant had moved to a new location. Hoopes said that he never received any keys from defendant and was not contacted by any agent of Prudential with regard to inspecting the premises at the termination of the lease. On October 6, Hoopes notified defendant by letter that he had not received either the keys or the rent for October. Two weeks later Hoopes inspected the premises and found the lights on. On prior occasions Hoopes said he had been admitted to defendant's offices by Eugene Brown, a janitor who had keys to the premises.

On cross-examination, Albert Hoopes admitted receiving a letter dated August 6, 1975, from Prudential indicating that they would not be renewing the lease. Hoopes said he had been negotiating with defendant

about renewal *prior* to receiving this letter. Defendant had wanted to stay over for several months but this was unsatisfactory to Mr. Hoopes who wanted to renew the lease, if at all, for a longer duration. Following the August 6 letter, Hoopes said he had no conversations with defendant's agents concerning renewal of the lease. Mr. Hoopes admitted that after noticing the signs that defendant had moved, he made no effort to contact defendant concerning either the lights or the keys.

The provisions in the lease with regard to signs stated:

> "It is expressly agreed that the Tenant may securely attach to the premises, with screws or otherwise, and may maintain for its use during the continuance of this lease or any renewal or extension thereof, such desks, fixtures, * * * or other articles as may be convenient for the conduct of its business. It is also agreed that all such fixtures and equipment installed by the Tenant shall remain the property of the Tenant, and the same may be removed by it at, or prior to, the expiration of this lease or any renewal or extension thereof."

A rider to the lease states that:

> "It is understood and agreed by the parties hereto that the Tenant may erect a sign or signs that may be affixed to the exterior of the said second floor; and it is further agreed that the said sign or signs shall remain the property of the Tenant and may be removed by the Tenant, at its expense, at or prior to, the expiration of this lease or any extension thereof."

■■ The issue central to this appeal is whether the trial judge erred in directing a verdict in defendant's favor at the close of the plaintiffs' case. Ordinarily, verdicts should only be directed in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Plaintiffs are wrong, however, in asserting that *Pedrick* is the governing standard in this case. In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399, the supreme court limited *Pedrick* saying:

> "*Pedrick* involved a trial before a jury, however, and is therefore signficantly distinguished from the instant case. The *Pedrick* rule was designed to prevent a trial judge from assuming the duties of the trier of fact in a jury case. In a trial without a jury, however, the trial judge is the trier of fact, and the *Pedrick* rule is not applicable. In a case tried without a jury, the trial court is to weigh the evidence when a defendant moves for judgment at the close of the plaintiff's case. (Ill. Rev. Stat. 1973, ch. 110, par. 64(3).) In ruling on the defendant's motion for judgment, therefore, the judge had the

duty to pass on the credibility of the witnesses and consider the weight and quality of the evidence. In weighing the evidence, the court had the responsibility to consider all the evidence, including any favorable to the defendant. The court was not to consider the evidence in the light most favorable to the plaintiff. Consequently, we will not reverse the decision of the trial court unless that decision is contrary to the manifest weight of the evidence." 64 Ill. 2d 40, 57-58, 349 N.E.2d 399, 407-08.

■■ *City of Evanston* is controlling. As in that case, we have here a directed verdict motion by defendant at the close of plaintiffs' case in a bench trial. Although the trial judge applied the *Pedrick* standard in granting defendant's motion, we shall review his decision under the manifest weight standard mandated by *City of Evanston.*

Plaintiffs assert that the following facts show that defendant never surrendered possession: (1) The lights were left on and electricity was billed to defendant until November 20; (2) "Moved to a new location" signs were left in the windows and business signs were left on the doors and exterior of the building; (3) plaintiffs never received the keys; (4) one of the defendant's employees retained a key and gained access to the premises after the term of the lease; and (5) defendant made no affirmative tender of possession at the end of the term. None of these facts, however, is conclusive or require a finding that defendant retained possession as a matter of law. Plaintiffs argue most strenuously that retention of the keys constitutes retention of possession, but:

> "The mere retention of keys where one claims to have been evicted from premises, does not amount to a retaining of constructive possession of the premises, any more than would a mere acceptance of the keys by the landlord, amount to a waiver by him of a claim for rent. Such an act is a matter of evidence, but does not of itself make a presumption of law." *Harmony Co. v. Rauch* (1896), 64 Ill. App. 386, 389.

■■ One case has come to our attention which seems to place great reliance on the tenant's retention of the keys. In *Burnham v. Martin* (1878), 90 Ill. 438, the supreme court held that the tenant had failed to prove abandonment in order to establish constructive eviction where he vacated the premises but retained the keys. *Burnham* is distinguishable since the tenant was not leaving at the end of the term pursuant to a written notice. Constructive eviction as a defense to a suit for rent necessarily requires unequivocal proof of abandonment since it occurs during the term of the lease. A tenant who changes his mind during the attempted abandonment is in a quite different position than defendant here who had given plaintiffs written notice that he would not be renewing the lease and actually moved its operations and left notice to the

world in the windows. In this context, the matter of the keys is much less significant and not conclusive evidence of possession.

■■ We are aware of no authority for the proposition that by leaving the lights on at the end of the tenancy a tenant becomes a holdover tenant in possession. Under the terms of this lease, defendant was not required to remove signs or fixtures, and leaving them behind does not constitute retained possession. Nor was defendant required to contact plaintiffs at the end of the term in order to walk through the premises to survey any damage or make an affirmative tender of possession. Such requirements are common in leases, but this lease contains no such requirement.

■■ Finally, the retention of one key which defendant's secretary used to gain access to the premises to remove a decal from the door may be evidence of possession, but is not conclusive. It was explained that this one key was not mailed to plaintiffs because the secretary who used it was on vacation. Her using it several weeks later to remove the decal may be construed as a trespass rather than a showing of retained possession.

■■ There was ample evidence which is supportive of defendant's position that it surrendered possession prior to the end of the lease term. Mr. Imlah testified that Prudential was completely moved out of the building prior to September 30. Dr. Hoopes admitted that he was aware that the defendant was going to move. Most importantly, Albert Hoopes verified that he had received a letter from defendant dated August 6 notifying him that it would not be renewing the lease. This notice, coupled with defendant's actual removal of its business from the premises and the notice left in the windows constitute ample evidence to support the finding that defendant had surrendered possession prior to the end of the lease term. For these reasons, granting a directed verdict for defendant was not against the manifest weight of the evidence.

Affirmed.

CRAVEN, P. J., and MILLS, J., concur.