THIRD DIVISION
May 31, 2006

No. 1-05-3295


SAMUEL OLIVA and JAYE VACALA REVOCABLE ) Appeal from the
TRUST, ) Circuit Court of
                              ) Cook County
         Plaintiffs-Appellants, )
                              )
v. )
                              )
AMTECH RELIABLE ELEVATOR COMPANY and )
OTIS ELEVATOR COMPANY, ) Honorable
                              ) Barbara J. Disko,
         Defendants-Appellees. ) Judge Presiding.


      JUSTICE KARNEZIS delivered the opinion of the court:

      Plaintiffs Samuel Oliva and the Jaye Vacala Revocable Trust filed a breach of

contract action against their tenants, defendants Amtech Reliable Elevator Company

(Amtech) and Otis Elevator Company (Otis), Amtech's lease assignee, seeking

damages for defendants' alleged breach of the parties' agreement to extend an office

lease for an additional three-year term.  The circuit court dismissed the action pursuant

to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)),

finding plaintiffs failed to state a cause of action because defendants had not accepted

the option to extend the lease for an additional three years in writing.  Plaintiffs appeal,

arguing that (1) the court erred in finding the lease required defendants' written notice of intent to exercise their option to extend the lease and (2) in the absence of a written notice requirement, defendants exercised their renewal option by paying the increased rent associated with the second renewal term. We reverse and remand.

Background

The well-pleaded facts in plaintiffs' amended complaint show that on August 17, 1993, plaintiffs entered into a lease with Amtech, agreeing to lease Amtech an office suite for six years. On February 6, 1999, plaintiffs sent a letter to Amtech, confirming that Amtech wished to extend its lease for a three-year term. The letter was to be considered a rider to the original lease and all terms of the new lease period would be "exactly the same as [Amtech's] original lease except for the following [in salient part]:

1. The original lease is extended for three additional years as follows:

    A. September 1, 1999 through August 31, 2000      $3,864.12

    B. September 1, 2000 through August 31, 2001      $4,057.33

    C. September 1, 2001 through August 31, 2002      $4,260.20

2. Amtech Reliable Elevator has an additional three year option as follows:

    A. September 1, 2002 through August 31, 2003      $4,473.20

    B. September 1, 2003 through August 31, 2004      $4,696.87

    C. September 1, 2004 through August 31, 2005      $4,931.71."

Amtech signed the rider on April 1, 1999. Amtech continued to occupy the premises and paid plaintiffs the increasing monthly rent as specified for each of the

three years of the 1999-2002 extension.

On September 1, 2002, upon expiration of the original three-year extension, Amtech began paying $4,473.20 per month, the increased monthly rent due for the first year of the optional three-year extension. Amtech paid this amount for 12 months.

In August 2003, Amtech assigned the lease and its extensions to Otis.

On September 1, 2003, Amtech began paying $4,696.87 per month, the increased monthly rent due for the second year of the optional extension.

On December 1, 2003, Otis notified plaintiffs by letter that it would be vacating the premises effective January 31, 2004. Otis stated that the lease expired on August 21, 2002, and that Otis, as Amtech's assignee, had been occupying the premises as a month-to-month tenant.

Plaintiffs filed for breach of contract, alleging when Amtech began to pay plaintiffs the $4,473.20 specified as the rent due for the first year of the optional extension Amtech exercised its option to extend the lease for a second three-year period through August 31, 2005, and Otis breached the lease and extension when it vacated the premises before August 31, 2005. Plaintiffs sought to recover rent for the balance of the three-year extension.

Defendants filed a combined motion to dismiss the amended complaint pursuant to sections 2-615 and 2-619(a)(7) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615; 2-619(a)(7) (West 2004)). Defendants asserted, pursuant to section 2-615, that plaintiffs failed to state a cause of action for breach of contract because written notice

was required to exercise the optional extension and defendants provided no such written notice; a lease option provision is a privilege belonging to the tenant and is not enforceable by the lessor; defendants were holdover tenants with the right to terminate the lease with 30 days notice, which they properly did; and plaintiffs seek future accruing rents in violation of Illinois law. Defendants also argued, pursuant to section 2-619(a)(7), that the alleged second three-year extension was unenforceable because it did not comply with the statute of frauds (740 ILCS 80/1 (West 2004)).

The court dismissed the amended complaint pursuant to section 2-615 of the Code, finding the lease required written notice of an intent to exercise the extension option and, because plaintiffs concede defendants did not give such notice, plaintiffs failed to allege their performance of the contract and thus failed to state a cause of action for breach of contract. The court denied plaintiffs' motion for reconsideration and plaintiffs appealed.

Analysis

A section 2-615 motion to dismiss is based on the pleadings rather than the underlying facts, admits all well-pleaded facts on the face of the complaint and attacks the legal sufficiency of the complaint, alleging only defects on the face of the complaint. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174, 1178 (2000); *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 6, 691 N.E.2d 807, 811 (1998). Viewing the complaint in the light most favorable to the nonmoving party, here plaintiffs, we must determine whether the complaint alleges facts sufficient to state a cause of

action upon which relief may be granted (*Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365, 1366 (1991)) and do not consider the merits of the case (*Elson*, 295 Ill. App. 3d at 5, 691 N.E.2d at 811)). In making that determination, we take as true all well-pleaded facts of the complaint, drawing all reasonable inferences therefrom in favor of the nonmoving party and disregarding mere conclusions of law unsupported by specific factual allegations. *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470, 794 N.E.2d 970, 972 (2003); *Ziemba*, 142 Ill. 2d at 47, 566 N.E.2d at 1366. Our standard of review is *de novo*. *Neppl*, 316 Ill. App. 3d at 583, 736 N.E.2d at 1178.

A lease is a contract between landlord and tenant and rules of contract construction apply to the construction of leases. *Williams v. Nagel*, 162 Ill. 2d 542, 555, 643 N.E.2d 816, 822 (1994). In order to state a cause of action for breach of contract, plaintiffs must allege the existence of a valid and enforceable contract, substantial performance by plaintiffs, breach of the contract by defendants and resultant injury to plaintiffs. *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 759, 814 N.E.2d 960, 967 (2004).

The court found plaintiffs failed to state a cause of action because (1) the lease required Amtech to notify plaintiffs in writing of its exercise of the option to extend the lease for an additional three-year term and (2) plaintiffs conceded Amtech did not give such written notice. Contrary to the court's finding, neither the lease nor the rider requires Amtech to give notice in writing of its intention to exercise its option to extend the lease. In fact, there is no requirement in either agreement that Amtech give any

5

1-05-3295

notice whatsoever of its intention regarding the option.

Defendants assert that provision 18 of the lease, relied on by the court, states a written notice requirement for exercise of the option to extend. The provision provides "any notices required or permitted to be given under this Lease shall be effective only if given in writing." However, besides the quoted provision, which refers to notice generally, the lease contains no requirement that Amtech must provide notice of its intent to exercise an option to extend.[1] Similarly, the rider contains no requirement that defendants provide notice of their intent to exercise the option to extend. In fact, the rider makes no mention of notice at all, requisite or otherwise. Accordingly, because neither the lease nor the rider required Amtech to provide any notice of its intent to exercise the option, no written notice of exercise of the option was required.

Since neither the lease nor the rider states a notice requirement, the question becomes whether the law requires some type of written or verbal notice of an exercise

---

[1] The lease originally contained a written notice requirement for exercise of an option to extend. However, presumably because the underlying lease did not contain an option to extend, the notice provision was scratched out. It was not reinstated when the rider subsequently provided for an option to extend.

6

of an option to extend a lease where the agreement between the parties setting forth the option is silent regarding notice. It does not. An option to extend the term of a lease is not an obligation; rather, it is a privilege belonging to the tenant, without any corresponding right or privilege in the landlord. *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 119, 751 N.E.2d 135, 140 (2001). Where, as here, a tenant has the privilege of extending the term of a lease, as distinguished from renewing a lease, no notice of the tenant's election is required in the absence of a stipulation requiring such notice, "merely remaining in possession being sufficient notice." *Vincent v. Laurent*, 165 Ill. App. 397, 403 (1911). The holding over by the tenant operates as sufficient notice to the landlord that the tenant has elected to exercise its option. *Smith v. Bradley*, 336 Ill. App. 272, 274-75, 83 N.E.2d 365, 366 (1949). Moreover, any requirement that a tenant notify a landlord of the tenant's intention to exercise an option to extend a lease inures to the benefit of the landlord and thus can be waived by the landlord. *Tandy Corp.*, 323 Ill. App. 3d at 120, 751 N.E.2d at 140. Unless the facts show otherwise, by accepting the increased rental, plaintiffs waived any notice to which they might have been entitled.

When Amtech remained in possession of the premises after expiration of the first three-year extension and paid the increased rent required under the option to extend the lease for a second three-year term, barring evidence to the contrary, it exercised that option to extend for the stated term.

As a basic proposition, a landlord's acceptance of rent after the expiration of a

lease containing an option to renew but no provision as to how or when that option was to be exercised creates a tenancy from year to year. *Butz v. Butz*, 13 Ill. App. 3d 341, 299 N.E.2d 782 (5th Dist. 1973). However, where, as here, the option provided for increased rent to be paid during its term and the tenant paid that increased rent, we find that the tenant has exercised its option to extend for the stated term, in this case three years. " '[A] tenant who holds over after the expiration of his term may, at the election of the landlord, be held to be either a trespasser or tenant for another similar term.' [*Commonwealth Building Corp. v. Hirschfield*, 307 Ill. App. 533, 536, 30 N.E.2d 790, 792 (1940).] To constitute a 'holding over' so as to trigger the landlord's option, the tenant's continued possession of the premises 'must be voluntary,' that is, the action of the tenant must 'disclose the right of the landlord to assume an intention on the tenant's part to create a second tenancy.' [*Hirschfield*, 307 Ill. App. at 536, 30 N.E.2d at 792.]" *Hoffman v. Altamore*, 352 Ill. App. 3d 246, 250-51, 815 N.E.2d 984, 988 (2004).

On the facts of the complaint, it was reasonable for plaintiffs to assume that Amtech affirmatively indicated its intent to exercise the option by staying on the premises and paying the higher rent due under the option. Clearly, when a tenant voluntarily continues to possess the premises and pays the higher rent specified under an option to renew, the landlord can assume from this action that the tenant intends to create another tenancy, the tenancy covered by the option.

This is especially true where, as here, the tenant cannot be considered merely a month-to-month holdover tenant. Notwithstanding defendants' argument to the contrary, the amended complaint does not support their assertion that they are merely month-to-month holdover tenants under the lease. Provision 23.8 of the lease defines "Holding Over" as follows: "Any holding over after the expiration of the Term with the consent of the Landlord shall be construed to be a tenancy from month to month at the Rent payable during the final full lease year (prorated on a monthly basis)." Amtech does not meet these parameters. Although it remained on the premises after expiration of the first three-year extension, it did not continue to pay the rent it had been paying during the last year of that lease extension. Rather, it began paying the higher monthly rent due for the first year of the optional three-year extension, as set out in the rider, and continued to pay that amount for the next 12 months. Accordingly, after expiration of the three-year extension, Amtech did not become a month-to-month holdover tenant under the lease. Instead, barring evidence of a contrary intention, Amtech continued its tenancy under the optional three-year extension of the lease when it exercised that option by remaining on the premises and paying the higher rent specified as due under the option.

As the court noted, no Illinois case has specifically held that, in the absence of a notice requirement, a tenant's continued possession of premises and payment of the increased rent specified in an optional lease extension operate as an exercise of that option. The single case precisely on point, *Harris v. Gindes*, 265 A.2d 598 (D.C.App.

1970), is from another jurisdiction. In *Harris,* as in the case at bar, a lease provided the tenant with an option for an additional term at an increased rent. The option contained no notice requirement and the tenant gave no notice before remaining in possession of the leased premises and paying the increased rent. The court held that the tenant affirmatively indicated his intent to exercise the lease option for an additional two-year term by remaining in possession of the leased premises and paying the increased rent required by the option. *Gindes*, 265 A.2d at 599. The court noted that, even if the tenant was required to give some form of notice of his intention prior to or concurrent with expiration of the original term, such notice would be for the landlord's benefit and could be waived by the landlord. *Gindes*, 265 A.2d at 599. By accepting the increased rent, the landlord waived notice "and both he and the tenant were obligated for the renewal term." *Gindes*, 265 A.2d at 599. The same applies here.

The amended complaint sufficiently alleged that Amtech exercised its option to extend the lease for an additional three-year term when it remained in possession of the premises and paid the increased rent and that Otis breached the extension agreement when it vacated the premises before that term expired. The court erred in dismissing the amended complaint for failure to state a cause of action on this basis.

Statute of Frauds

Defendants argue alternatively, pursuant to section 2-619(a)(7) of the Code, the complaint should be dismissed because the alleged agreement to extend the lease for a second three-year term fails to comply with the statute of frauds. The court did not

address this issue, having dismissed the complaint for failure to state a cause of action, but we may affirm the court on any basis in the record. *Park Superintendents' Professional Ass'n v. Ryan*, 319 Ill. App. 3d 751, 757, 745 N.E.2d 618, 624 (2001).

Subject to *de novo* review, a section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matters, such as noncompliance with the statute of frauds, which avoid the legal effect of or defeat a claim. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383, 808 N.E.2d 957, 962 (2004). Interpreting all pleadings and supporting documents in the light most favorable to the nonmoving party, the defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit. *Borowiec*, 209 Ill. 2d at 383, 808 N.E.2d at 962.

The statute of frauds provides in salient part:

"No action shall be brought, * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith * * *. " 740 ILCS 80/1.

Defendants posit that any agreement to extend the lease for a second three-year term could not be performed within the space of one year, either from the date of the rider or from the date the first three-year extension expired and, therefore, such an agreement would violate the statute of frauds unless it is in writing. Defendants argue that the rider

11

is, in salient part, merely an option to extend the lease for a second time which had to be accepted in writing and, because they never agreed in writing to exercise that option, plaintiffs' claims are barred by the statute of frauds.

"Where the extended term of the lease is fixed in the original lease and comes into existence by the exercise of the option and the giving of the required notice, lessee holds for the extended term by virtue of the original lease which is in writing and satisfies the statute [of frauds]. [Citation.]  This rule may apply even where the notice of intention to exercise the option is verbal." *Kaybill Corp. v. Cherne*, 24 Ill. App. 3d 309, 321, 320 N.E.2d 598, 608 (1974).  As discussed previously, the parties' agreement contained no requirement that the option be accepted in writing.  In the absence of a written notice requirement, the option could be accepted verbally or, as here, by Amtech's voluntary action manifesting its exercise of the option.  The lease and rider satisfied the statute of frauds, being memorialized in a writing signed by the parties. Incorporated within these writings is the option to extend the lease, which Amtech exercised by holding over and paying the increased rent due for the new term. Defendants held possession of the premises by virtue of the original lease and rider which were in writing and satisfied the statute of frauds.  *Kaybill Corp.*, 24 Ill. App. 3d at 321, 320 N.E.2d at 608.

For the reasons stated above, we reverse the decision of the circuit court and remand for further proceedings.

Reversed and remanded.

1-05-3295

HOFFMAN, P.J., and ERICKSON, J., concur.